OPINION
William Landefeld appeals from the judgment of the Greene County Common Pleas Court which denied his motion to hold his former spouse, Sandra Landefeld, in contempt for failing to transfer 400 shares of Bank of New York stock to him as ordered in the final decree of divorce.
The Landefelds were married on April 7, 1973 and one child, Thomas, was born on January 8, 1984. The parties were awarded a final judgment and decree of separation in Case No. 96-DR-0879 on June 20, 1997. In the Final Judgment and Decree of Separation, the court adopted the parties' agreement that William Landefeld shall be the absolute owner of 400 shares of Bank of New York stock. The parties agreed that the transfer of the securities would be made on November 1, 1997 and in the interim Sandra would receive the dividends from the stock. The decree also provided that William would pay Sandra $100,000 at the rate of $5000 a year for a period of 20 years commencing on December 31, 1997 as a property settlement. On August 14, 1998 the Bank of New York shares split two for one and now were 800 shares. Sandra subsequently transferred only 400 shares of the Bank of New York stock to William.
On September 30, 1999, Sandra filed her complaint for divorce. William answered and counterclaimed for divorce and on December 14, 1999, the court granted Sandra a divorce upon her complaint. The trial court made the following provisions in the final decree:
 The Court further finds that the parties have entered into an agreement settling between themselves all issues relating to the payment of child support, custody, spousal support, and payment of debts. The Court finds that the parties' agreement, incorporated herein and made a part hereof is fair and reasonable and orders both parties to abide by the terms and conditions thereof. The parties' agreement is approved by the Court and is recited herein as follows:
 1. The Court has previously granted a Final Judgment and Decree of Legal Separation to the parties on June 20, 1997. That Final Judgment and Decree of Legal Separation is incorporated herein and is reaffirmed except to the extent modified in this Order.
 2. All securities which have not been transferred in accordance with the previous order of the Court shall be done forthwith.
 3. The Wife shall waive her claim for spousal support and the Husband's spousal support obligation is terminated. There is no arreage [sic] arising from the parties' previous Final Judgment and Decree.
 4. The parties' previous property settlement provisions are hereby modified to provide that the Husband will pay to the Wife as and for a property settlement the sum of Sixty Thousand ($60,000) Dollars of which Fifty Thousand ($50,000) Dollars shall be paid on December 2, 1999, and additional sums of Five Thousand ($5,000) Dollars each shall be paid on February 15, 2000, and April 15, 2000. There is no arrearage from the parties' Final Judgment and Decree of Legal Separation.
 5. The real estate located at 3879 Upper Bellbrook Road, Bellbrook, Ohio 45305 shall remain in the joint names of the parties as security for the payment of the property settlement provisions provided for herein. Upon payment of the last installment in the amount of Five Thousand ($5,000) Dollars on April 15, 2000, the Wife shall execute a quit-claim deed thereby divesting her of any interest therein.
 On November 3, 2000, William filed his motion to hold Sandra in contempt for failing to transfer the Bank of New York shares on or before November 1, 1997 as previously ordered. In the motion William represented to the court that Sandra turned over 400 unsigned shares of Bank of New York shares to him along with two unendorsed dividend checks totaling $128. William represented that Sandra had received $1,172.00 in dividends since November 1, 1997 improperly.
At the hearing William testified that between 1997 and 1999 he asked Sandra on at least three occasions to turn over the Bank of New York stock. He testified he did not make the annual $5000 payment to Sandra because they had been discussing a reconciliation and he thought they were "different issues." (Tr. 7).
William testified he learned just prior to their divorce that the Bank of New York stock had split. He testified the stock was valued at approximately $20 a share at the time of their separation. (Tr. 10). He testified that Sandra received $1460 in dividends after November 1997. Before the divorce, William testified he and Sandra renegotiated some of the terms regarding spousal support and property settlement (Tr. 14). William testified he agreed to pay $60,000 to resolve the issues of spousal support and property settlement. William testified that he learned in June 2000 that Sandra had cashed in or sold 400 shares of the Bank of New York stock (Tr. 17). He said Sandra sent him the other 400 shares shortly thereafter. (Tr. 19).
Sandra testified that she did not transfer the 400 shares of Bank of New York stock to William as required by the decree of separation because William had not transferred the Tommy Hilfiger stock to her. (Tr. 45). She testified that when the Bank of New York stock split in August 1998 she was sent the extra 400 shares. She said she sold the additional shares for $12,357 in October 1998. She said she didn't give the money to William because William had not paid the two $5000 annual payments per their property settlement. (Tr. 46). She said William knew she had sold the 400 shares before the final divorce was entered so she assumed he knew he was only going to get 400 shares of Bank of New York stock. (Tr. 46). She said if she knew he would be making an issue of only receiving 400 shares she would most certainly have made that an issue with her attorney.
She testified she and William had heated discussions during 1997 and 1998 about the stocks and the money that was owed by William. (Tr. 55). She testified she told William well before the divorce that she had sold the Bank of New York stock. She testified she paid the capital gains tax on the sale of the stock and netted $9000 which was less than the $10,000 her husband owed her. She testified she agreed in the final divorce to accepting only $50,000 for the house and a lump sum payment of $10,000 instead of eight years of alimony in order to get the divorce.
Shari Dunkelberger testified that she lived with Sandra in 1999. She said she was present when Sandra had a telephone conversation with William in which she disclosed to William that she had sold shares of stock because William had not paid the $5000 a year she owed him. She said this conversation took place in October 1999 prior to their divorce. (Tr. 79).
After a hearing, the magistrate recommended that the trial court not find Sandra in contempt for failing to transfer the stock as previously ordered. The magistrate found that William knew that the stock split prior to the filing of the divorce decree and knew that Sandra had sold 400 of the split shares. The magistrate found that William was obligated to modify the terms of the Final Decree of Divorce as it pertained to the Bank of America stock if he in fact desired or intended on receiving more than the 400 shares that were granted him in the legal separation. The magistrate noted that since the Decree of Divorce was silent as to any modification of the 400 share provision, William was entitled to the 400 shares of stock plus any dividends payable on those 400 shares of stock. The magistrate then found that Sandra owed William $694.00 for the dividends attributable to the 400 shares.
William filed objections to the magistrate's recommendations which were overruled by the trial court. The trial court noted that William knew Sandra had sold 400 shares before the final divorce. The court also noted that William owed Sandra $10,000 in unpaid spousal support for the years 1997 and 1998. The court noted that after the stock was sold and taxes paid Sandra realized a profit of $9,000. The court noted that "the divorce complaint could have been amended to incorporate the stock split and offset the unpaid spousal support but that was not done. The final decree is silent on the subject. Therefore, it is determined that the stock was offset by the unpaid spousal support."
In a single assignment, William argues that the trial court abused its discretion in failing to order Sandra to re-purchase 400 shares of Bank of New York stock and turn the stock over to William. Appellant argues that he became the absolute owner of the Bank of New York stock as of the date of the Final Decree of Separation, June 20, 1997. We agree with that proposition and as such William would have been entitled to the additional shares which were issued when the stock split.
It is, however, the conduct of the parties after the separation decree was entered which troubled the trial court and led to its order denying William's contempt motion.
Sandra did not transfer her interest in the Bank of New York stock in November 1997 and William did not transfer his interest to Sandra in the Tommy Hilfiger stock. William did not make the $5000 property settlement payment to Sandra in December 1997 as provided in the decree and, according to Sandra, informed her "he told me he was never going to pay me the $5000 no matter what." (Tr. 63). Sandra said it was this conduct of William which prompted her to sell the split shares in October 1998. There is no dispute that William did not make the $5000 property settlement payment in December 1998.
Although William expected his wife to comply with all the provisions of the separation decree, he ignored his responsibility to pay Sandra $5000 at the end of 1997 as required by the decree of separation. He explained that he didn't make the payment because there was some discussion about reconciling and "I figured if we were going to do that, we could renegotiate." (Tr. 7).
It is clear that the Landefelds renegotiated several of the terms of this separation decree and included new provisions in their final decree of divorce. The trial court could reasonably find that William knew that Sandra had sold the split shares before the final divorce was entered and that Sandra had taken that into consideration in accepting far less in a property settlement in the divorce than she had received in the separation decree. The court found that since the final divorce decree was silent concerning the stock split and Williams' $10,000 delinquent property settlement payments, that the parties must have intended their renegotiated settlement as a resolution of all outstanding issues. We certainly cannot say that the court's resolution of this issue was unreasonable under all the circumstances. The assignment of error is overruled.
The judgment of the trial court is Affirmed.
WOLFF, P.J., and YOUNG, J., concur.